397 S.E.2d 910

**Robert N. MORELAND and Naomi Moreland, His Wife, Appellants,**

v.

**Al SUTTMILLER, t/a Three Star Services, Defendant and Third–Party Plaintiff Below, Appellee,**

v.

**VELSICOL CHEMICAL CORPORATION, Third–Party Defendant Below, Appellee.**

No. 19132.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

Douglas B. Hunt, Charleston, for Robert N. Moreland.

Oscar M. Bean, Moorefield, for Al Suttmiller Three Star Services.

Richard L. Earles, Shuman, Annand & Poe, Charleston, for Velsicol Chemical Corp.

PER CURIAM:

This case is before this Court pursuant to an appeal from an order of the Honorable Judge C. Reeves Taylor, Circuit Judge of Mineral County. The appellants in this case appeal the June 21, 1988 dismissal order in which the court granted appellees' motions to enforce respective settlement agreements reached in a civil action. On appeal, the appellants assert that the court erred in holding that settlement agreements had been reached between the appellants and both appellees. In addition, the appellants maintain that their attorney did not have authority to enter into the settlements with the appellees on their behalf. Error is also alleged to have resulted because the court below failed to provide appellants with an evidentiary hearing to determine whether the settlement agreements were executed under mistake, duress, coercion or lack of authority. We affirm the decision of the circuit court.

The underlying civil action was filed on August 8, 1979, by the appellants, Robert N. and Naomi Moreland. In that action, the Morelands brought suit against the appellee Al Suttmiller for damages resulting from alleged carelessness, negligence and incompetence in the use and application of Chlordane for termite extermination treatment in appellants' home. Suttmiller brought the appellee Velsicol, the manufacturer of the chemical Chlordane, into this

suit as a third party defendant on a claim of indemnification on June 13, 1980.

In the fall of 1987, the parties engaged in serious negotiations in an effort to settle this case. At a hearing on September 14, 1987, counsel for the appellants announced in their presence that a settlement in the amount of $9,500.00 had been reached between the appellants and the appellee Velsicol. No objection to the settlement was heard by the appellants. Subsequent to this announcement of the settlement in court, the appellants refused to sign the release prepared to effectuate the settlement. Velsicol then filed a petition to enforce the settlement agreement at the end of September, 1987.

At a hearing held on October 1, 1987, counsel for the appellants informed the court in their presence that he believed there was an existing agreement to settle with Velsicol and that there was a meeting of the minds between Velsicol and the Morelands. Counsel for petitioners further explained that there was some problem with the language included in the release supplied by Velsicol, but that it was one which could be worked out. The pertinent language involved an indemnity provision with the remaining respondent Suttmiller.[1] Appellants themselves once again were not heard to raise any complaint as to the substance of the settlement. At the conclusion of this hearing, the court deferred decision on enforcement of the settlement agreement to give the parties an opportunity to work out any remaining problems with the settlement.

Another pretrial proceeding on the motion to enforce the settlement agreement was held on December 8, 1987. At that time, the release between Velsicol and the Morelands remained unsigned and disputed. Furthermore, counsel for the appellants informed the court that there had also been discussion of settlement between the appellants and Suttmiller in an amount of $71,000.00. Appellants' counsel explained to the court that his "clients ha[d]

been vacillating" and that at one time they had given him "authority to settle" but then they called back the following day and told him they had changed their minds. At the December 8, 1987 hearing, appellants' counsel possessed written authority, but that authority had been revoked pursuant to a phone call which took place the morning of the hearing. Since the Morelands were present at this hearing, the court allowed Mrs. Moreland to address the court regarding the settlements. Mrs. Moreland informed the court that she and Mr. Moreland had considered the settlement offers from both appellees, but were unsure as to whether $80,500.00 (the joint amount of both offers) would be sufficient to fully compensate them for the costs associated with removing the chemical Chlordane from their home. Salient portions of her statement included the following:

> We think this offer of settlement is very low and very unfair. We have considered it because of our failure and our health. Both of us are going down fast. But their offer does not cover the clean-up, and we think that if they want out of this and they want a release, that they should pay for the clean-up over and above this settlement.
>
> ....
>
> ... After we considered settlement and began to start plans for work and clean-up and to rebuild, we run into a brick wall. We can do nothing. We cannot accept unless Velsicol will pay for the chemical clean-up.... Our plea is to you, Your Honor, that *our settlement* of eighty thousand be raised by both parties to what the cost really will be to us, which is $105,000.00.... (emphasis added)

At the conclusion of this December 8, 1987 hearing, the court deferred ruling on Velsicol's request to enforce the settlement agreement and set a thirty-day period during which the parties were to attempt to settle this case. The previously set trial

---

1. This provision involved the appellants' agreement to indemnify and hold harmless the third-party defendant, Velsicol, from any liability exposure that may arise as a result of any subsequent judgment where Suttmiller may be entitled to seek contribution from Velsicol. This issue became moot once Suttmiller also reached a settlement with appellants.

date of January 19, 1988 was continued, and the court informed the parties that if this case did not settle, a trial would be held by the end of February, 1988.

On February 29, 1988, appellee Suttmiller filed a motion to enforce a settlement agreement it maintained had been reached with the appellants. The petition, which was never answered or denied by appellants, alleged *inter alia* that counsel for appellants had advised counsel for appellee Suttmiller that he had required both Mr. and Mrs. Moreland to provide him with written authority to settle, and that after he had received the written authority to settle, he had waited an additional period of several days to ensure that the Morelands didn't renounce such authority. Also during February 1988, letters regarding the settlement agreements were written by the appellants to their counsel and by their counsel to them in response. In a February 10, 1988 letter handwritten by Mrs. Moreland, the following was stated:

> We have not changed our minds in any way. *We do agree to accept the $80,-000.[00] offer of settlement you made us,* no less, but we cannot and will not accept the Velsicol release as a release we must sign.... We know that $80,-000.[00] is a small recovery for all we been through, but *we agreed to accept it* to get this worry behind us.... (emphasis added)

In addition, Mrs. Moreland informed their counsel in this letter that she and her husband would not sign the Velsicol release because they never sued them, but that they would take the $9,500.00 as a gift with no strings attached. In letters dated February 3 and February 16, 1988, appellants' counsel, Mr. Shinaberry, informed the appellants that they were required to execute the releases before they could get the money for the settlement. If they continued to refuse to sign the releases, Mr. Shinaberry, advised them that the appellees would have no other recourse but to proceed with the petitions to enforce the settlement agreements in court. Mr. Shinaberry's letter of February 16 reflects his frustration with the fluidity of his clients' position. In that letter, a copy of which was sent to Judge Taylor, Mr. Shinaberry went so far as to tell his clients that they would receive the settlement free from any obligation to pay a contingency fee or reimburse him for expenses. Mr. Shinaberry further advised the Morelands he could not represent them in opposition to the pending motions to enforce.

Since the appellants continued to refuse to sign the releases, the appellees proceeded on the petitions to enforce the settlement agreements at a hearing held on May 21, 1988. Appellants' counsel and both appellees by counsel advised the court at this hearing that they believed that a settlement had been reached in this matter between the Morelands and both appellees. Counsel for the Morelands also reaffirmed that he had made a settlement on behalf of his clients and that the releases were in satisfactory form. As evidence of the consummation of a settlement agreement, checks had been written to the appellants in the amounts of $71,000.00 from Suttmiller and $9,500.00 from Velsicol. Because the Morelands refused to execute the releases prepared by appellees, the checks had not been tendered to the appellants. Based on his belief that a settlement agreement had been reached between the Morelands and both appellees, counsel for appellants informed the court that the previous problem posed by the indemnification language in the release prepared by Velsicol was no longer of any concern given the joint settlement. The problem which currently existed and barred culmination of this matter, he explained to the court, was that his clients believed that the offer of settlement was too low. In addition, Mr. Shinaberry reaffirmed the settlement in the following dialogue with the court:

> The Court: But you do not change anything from what you've said in your February 16 letter to Mrs. Moreland which I now have a copy and filed, nor to the letter you wrote me on March the 15th of '88. Is that right? What that contains and referred to by Mr. Earles as opposing counsel, it is still, you see that you have reached a settlement with these attorneys?

Mr. Shinaberry: Yes sir.

Finally, Mr. and Mrs. Moreland both addressed the court at this hearing. Mrs. Moreland stated:

Mr. Shinaberry told us that he wanted us to take this settlement and not go to court; if we did, we probably would have to get another attorney. And this is what shook us up, and *we took this $80,-000.00 offer*. And these letters and communications that we made was that *we would accept it* before we would start all over hunting another lawyer to go to court. (emphasis added)

At the conclusion of the May 21, 1988 hearing, the court informed the parties that he would sign the necessary dismissal orders, because he believed that a settlement had been reached between the Morelands and both appellees. In the dismissal order entered June 21, 1988, the court granted appellees' motions to enforce the settlement agreements and ordered that checks be written out in the proper amounts by both appellees and forwarded to the appellants' counsel. The court instructed the Morelands that if they refused to sign and cash the checks, the court would then appoint a receiver.

■ We uphold the circuit court's decision to enforce the settlement agreements. The record is replete with evidence sufficient to assure us that on several occasions the petitioners intended to enter into settlement agreements with both appellees and authorized their attorney to do so on their behalf. The presence of the appellants at several of the hearings and their corresponding statements to the court gave the court the opportunity to fully assess the Morelands' response to the settlements. In the presence of the Morelands at the September 14, 1987 hearing, the release was explained in simple layman terms and a frank assessment of the strengths and weaknesses of their case, as well as a summary of anticipated strategical and practical problems with proceeding to trial, was presented by appellants' counsel by way of explanation as to why he had recommended the settlements. It is true that the appellants vacillated on a number of occasions, but the substance of the settlements was presented in court in their presence and was reaffirmed by them in correspondence to their attorney in February 1988.

■ At one point, the petitioners refused to sign a release until Mrs. Moreland underwent a liver test to determine whether the Chlordane had caused adverse effects on her liver. Once the test came back normal, then a problem arose concerning an indemnification provision in the Velsicol release. Even if the appellants had a valid concern with the indemnification portion of the Velsicol release, this issue became moot when settlement was reached with both appellees. Despite the fact that this legality was explained to the appellants, they continued to refuse to sign the releases due to their assertion that a problem still existed with indemnification with the appellee Velsicol. Actually though, the true focus of the appellants' reservations regarding the settlement agreements appear to relate to their belief that they had settled for an inadequate amount. The difficulty with the position they adopt now is that in spite of such concerns they did authorize their attorney to enter the settlements in their behalf. Once a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement does not constitute good cause for setting it aside.

■ On the whole, we believe that the evidence shows that settlement agreements were culminated between the appellants and both appellees. We base our conclusion in part on the Morelands' written and oral communications with their counsel and the court. In the February 10, 1988 letter to their counsel, Mrs. Moreland hand wrote that they agreed to accept the offer of settlement made to them. Then, when Mrs. Moreland addressed the court at the May 21, 1988 hearing, she informed the court that they "took the $80,000.00 offer." These personal acknowledgements of a settlement made by the appellants themselves, along with their attorney's representation that he entered into the settlements with

their authorization, provide us with sufficient proof that settlements were entered into in this case. Neither appellants' counsel nor the court below acted in an overbearing manner in reaching the conclusion that settlements had been reached. Counsel for the appellants at the December 8, 1987 hearing possessed written authorization to settle but was honest in relating that that authorization had been revoked by phone that morning. The court held several hearings on the motion to enforce the settlements and declined to enforce the settlements at least three times, continuing the matter for trial. Scheduled discovery was delayed on several occasions in an effort to give the parties the ability to finalize that agreement into which they all indicated they wanted to enter. We stated in Syl. pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968) that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." We therefore uphold the circuit court's decision that settlements had been reached in this case.

In addition to the appellants' argument that settlement agreements had not been reached, they also assert that their counsel did not have clear authority to enter into settlements with the appellees. We find this argument without merit. The Morelands were present at every hearing held since settlement negotiations began. Even though appellants' counsel announced at these hearings that settlement options were being pursued, and even that settlement had been reached, the record does not reflect any attempt by appellants to repudiate the fiduciary relationship established with their counsel, although they would have had sufficient opportunity to have done so. In Syl. Pt. 1, of *Miranosky v. Parson*, 152 W.Va. 241, 161 S.E.2d 665 (1968) we held that "[W]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is

upon the party denying the authority to clearly show the want of authority." Furthermore, "[t]he question of the attorney's want of authority to represent clients must be raised immediately by a motion or petition accompanied by affidavits." Syl. Pt. 2, *Miranosky*, 152 W.Va. at 241, 161 S.E.2d at 665–66.

Another issue raised by appellants is that the circuit court committed error by failing to hold an evidentiary hearing on the issues of mistake, duress, coercion or lack of authority in making the alleged settlement agreements. Under W.Va.R.Civ.P. 60(b), "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding" for certain specified reasons. If the Morelands were aggrieved by the determination of the circuit court to enforce the settlements, they could have obtained counsel after the June 21, 1988 dismissal order and filed a motion pursuant to W.Va.R.Civ.P. 60(b). Although no such motion was made by petitioners requesting such a hearing, that fact alone is not dispositive of this matter. Under W.Va. R.Civ.P. 60(b), the court is not limited to motions and can "entertain an independent action to relieve a party from a judgment, order or proceeding, ... or to set aside a judgment for fraud upon the court." The ability to vacate a judgment pursuant to Rule 60(b) is left to the discretion of the court. *See* Syllabus, *Sharp v. Southern W.Va. Regional Health Council*, 178 W.Va. 196, 358 S.E.2d 455 (1987); Syl. Pt. 5, *Toler v. Shelton*, Syl. Pt. 5, 157 W.Va. 778, 204 S.E.2d 85 (1974); *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970). We find that the court committed no error by failing to hold an evidentiary hearing pursuant to W.Va. R.Civ.P. 60(b). In making this finding, we observe from the record that the court gave the Morelands sufficient opportunity to be heard before the decision was made to enforce the settlement agreements. The court made itself aware of the circumstances under which these settlements were reached and we perceive no error in the failure to hold an evidentiary hearing

after the decision was made to enforce the settlement agreements.

We therefore affirm the circuit court's decision to enforce the settlement agreements between the appellants and the appellees Velsicol and Suttmiller.

Affirmed.