# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**DONNA FRIDLEY,**
**Petitioner Below, Petitioner**

**FILED**

**November 14, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-1140** (Tucker County 14-D-14)

**JACK PLUM,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

In this divorce action, Petitioner Donna Fridley, by counsel, Jaymie Godwin Wilfong, appeals an order of the Circuit Court of Tucker County, West Virginia. The circuit court affirmed the family court's final order which adopted a settlement agreement entered into between the parties. Petitioner requests we invalidate the settlement agreement and remand the matter to family court so that the parties may fully litigate the issues of property distribution. Respondent Jack Plum, by counsel, C. Paul Estep, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. We find no substantial question of law and therefore a memorandum decision affirming the judgment is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. As explained below, this Court finds no error in the circuit court and the family court's enforcement of the settlement agreement.

The parties married in 2010; no children were born of the marriage. The parties were divorced by family court order entered on March 2, 2015. The family court adopted a settlement agreement entered into by the parties during a court-ordered settlement conference.[1] The parties participated in this settlement conference on December 4, 2014. Petitioner, who was represented by counsel intermittently during the pendency of the divorce, appeared pro se at the conference; Respondent was represented by counsel.

During the course of litigation, an issue arose as to whether the home the parties resided in was a marital asset. As Respondent explains in his brief,

[Petitioner] maintained that the home had been rented from her sister, and that [Respondent] had no marital claim to it. [Respondent] found out during the divorce proceeding that the house had actually been deeded to [Petitioner] during the course of the marriage, unbeknownst to him, and that the payments that were

---

[1]The parties did not attend court-ordered mediation.

1

made during the marriage had been reducing the principle [sic] indebtedness, and further that the payments made from marital funds had been paying for casualty insurance on the premises. When [Respondent] discovered the house might be a marital asset and he made a claim for equitable distribution, the house suddenly burned down and the insurance proceeds (believed to be around $200,000.00) [were] paid strictly to [Petitioner] because she bought the insurance policy in her name. [Respondent], through counsel, expected to argue that the insurance proceeds were marital property and subject to equitable distribution.[2]

(Footnote added).

As a result of the negotiations, the parties reached a settlement agreement on December 4, 2014; they executed a handwritten settlement agreement (titled "Memorandum of Understanding") and it was witnessed by a clerk at the hotel in which the settlement conference was held. At the time the settlement agreement was reached, one criminal charge was pending against Petitioner involving domestic battery and there was another potential criminal charge against her involving forgery and fraud.[3] At Petitioner's request, the settlement agreement addressed the criminal matters. Following the conference, Respondent's attorney reduced the settlement agreement to a typewritten document; it provided, in part:

1.      Petitioner . . . shall pay Respondent . . . $25,000.00 to equalize the marital estate. . . .
2.      Petitioner shall pay $1,000.00 at the final hearing scheduled for Tuesday, December 9, 2014;
3.      Each party shall hold the other harmless for his/her own debt. Each party shall keep such personal property as is already in his/her possession . . . .
4.      Respondent shall ask the Tucker County prosecutor not to pursue criminal charges, and Respondent shall not make any further complaints after today; however, Petitioner acknowledges that Respondent has no control over the prosecutor or police, and that Respondent may have to cooperate in an investigation if required to but Respondent agrees not to actively pursue any more criminal investigation[s] or administrative complaints of any kind;
5.      Alimony is waived and forever barred;

---

[2]In her brief before this Court, Petitioner did not address this significant issue.

[3]With respect to the domestic battery, police officers arrested Petitioner after they received a complaint from Respondent that when he was at his residence on April 22, 2014, Petitioner repeatedly struck him with the bumper of her vehicle. Respondent reportedly had to receive medical treatment for his injuries following this altercation.

The second potential criminal matter involved a fraud allegation against Petitioner. Respondent stated that he learned that Petitioner forged his signature to obtain financing to purchase a truck while the parties were separated. He planned to sue the bank that financed this truck based on the forged documents, the dealership that sold the truck based on the forged documents, and pursue charges against Petitioner.

6.     Petitioner represents that no other credit accounts have been taken out in Respondent's name, and Respondent represents that he has no credit card debt. If Respondent finds credit card debt he disputes, he reserves the right to file an affidavit of forgery to dispute such debt; however, Respondent will not pursue a criminal charge;

7.     In the presence of both parties, counsel will call the prosecutor and tell him that Respondent has agreed to ask him not to pursue a criminal charge on Tuesday, December 9, 2014 and that both parties acknowledge that decision is his[.]

On the morning of December 9, 2014, Petitioner and her counsel went to the Tucker County Magistrate Court for a hearing scheduled on the criminal matter. After the domestic battery charge was dismissed on the State's motion, Petitioner appeared in family court later that same day and disavowed the settlement agreement. The family court continued the matter and granted leave for Respondent to file a motion to enforce the settlement agreement. Petitioner, by counsel, filed a response to this motion. Ultimately, the matter came on for final hearing before the family court. It ruled that the settlement agreement was "fair, valid, enforceable and was not the result of fraud, duress or other unconscionable conduct of either party[.]"[4]

Petitioner appealed that decision to circuit court and claimed the settlement agreement should be set aside. The circuit court rejected her arguments and stated:

Petitioner freely and voluntarily entered into [the settlement agreement]. The Court finds that the Petitioner had adequate opportunity to take breaks from the negotiation to consult with someone who she represented to Attorney Estep was her former attorney, Ms. Blythe, via telephone during the negotiation, the negotiation was held at a neutral location (rather than at Attorney Estep's office), Petitioner signed the document and had it witnessed by an uninterested party, and Petitioner was present while Attorney Estep called the Tucker County Prosecuting Attorney to ask him to dismiss the pending criminal charges against Petitioner as per the settlement agreement. Furthermore, Petitioner had adequate knowledge, through discovery in this matter and by the knowledge she had as debtor, of the marital debts of the parties to allow her to make decisions regarding the allocation of property and debts between the two parties. Finally, Petitioner knew that the trial before the Family Court Judge was cancelled since the parties had reached an agreement and that there would be no testimony taken the date of the hearing to confirm the agreement.

The Court finds that the agreement was fair and conveyed real benefit to the Petitioner given the pending criminal charges in Tucker County wherein it was alleged that Petitioner had tried to run over Respondent with a truck, and the potential forgery of Respondent's name by the Petitioner to obtain credit and purchase an automobile post-separation from a Maryland dealership. In fact,

---

[4] The family court noted that counsel for Petitioner notified the court of her intention to withdraw from representation again "because of misrepresentations made by her client."

Petitioner used the agreement at her December 9, 2014[,] hearing before the Tucker County Magistrate Court to help secure the dismissal of the criminal charges against her. Immediately after this hearing, Petitioner appeared in the Tucker Family Court and argued that the agreement was unfair and she should not be bound by same by the Family Court. *Petitioner's actions reek of bad faith* and her appeal of the Family Court Final Order affirming the settlement agreement is not well taken.

(Emphasis added).

Petitioner now appeals to this Court and raises the same arguments as she did below. We apply the following standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, Petitioner raises several assignments of error. Her arguments, while circuitous and inter-related, are essentially that the settlement agreement is not enforceable because: 1) there was no "meeting of the minds" to form a contract; 2) it includes an impermissible term for negotiation (that Respondent would not pursue criminal charges against her); and 3) the parties failed to file complete financial statements.[5]

As we indicated in *Nakashima v. Nakashima*, 171 W.Va. 9, 297 S.E.2d 208 (1982), "this Court favors fair and equitable contracts between divorcing parties." *Id*. at 11, 297 S.E.2d at 210. Thus, a separation agreement "may contractually fix the division of property between the parties" pursuant to West Virginia Code § 48-6-201 (2015), if

> the court finds that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties, and further finds that the parties, through the separation agreement, have expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings[.]

The family court made the above findings in the instant case and gave its approval to the

---

[5]Petitioner's other assignments of error lack merit. Specifically, she asserts that the family court failed to make a finding that the settlement agreement was fair and reasonable. However, the family court clearly made that finding in its order. She also complains that the record of the family court hearing held on December 9, 2014, lacked audio recording. This problem is of no moment as her attorney at the time prepared the order following this hearing and the order simply provided that the trial would be continued.

settlement agreement as a legally binding contract despite Petitioner's contentions to the contrary. Based on the record before this Court, we cannot conclude that those findings are clearly erroneous. Accordingly, we reject Petitioner's initial claim that the parties failed to reach a binding settlement agreement.

Turning to her second assignment of error, Petitioner asserts that it was "not a proper bargaining chip" for Respondent to agree to go to the prosecuting attorney to ask that a criminal matter not be prosecuted against her. Although poorly developed, she argues in essence that the pending criminal charge against her raises Respondent's entreaties to sign the agreement to the level of duress or undue influence. However, Respondent counters that what Petitioner fails to mention is that his offer to seek the dismissal of a criminal charge against Petitioner "was done specifically at her request, after the other terms of the settlement had been negotiated. At no point did the whole arrangement hinge on [Respondent's] offer to seek dismissal of criminal charges." To the contrary, Respondent avers this term was made to accommodate Petitioner and end all controversies between the parties. "Since property settlement agreements, when properly executed, are legal and binding, this Court will not set aside such agreements on allegations of duress and undue influence absent clear and convincing proof of such claims." Syl. Pt. 2, *Warner v. Warner*, 183 W.Va. 90, 394 S.E.2d 74 (1990). In this case, we agree with the circuit court's assessment that Petitioner's blatant strategy to use the parties' settlement agreement to help secure the dismissal of the criminal charges against her (before repudiating it hours later in family court) completely undermines her credibility in asserting the settlement agreement was invalid due to duress or undue influence. Significantly, Petitioner does not assert that Respondent or his counsel acted inappropriately or threatened her in any way with the pending criminal matter if she did not enter into the settlement agreement.

Petitioner's final argument is that the family court erred in enforcing the settlement agreement when the parties failed to file complete financial statements. As she did below, Petitioner provides no specifics as to the amount of debt on the property; the appendix record she submitted to this Court contains no financial statements. Nevertheless, we acknowledge that this is the gravamen of her appeal. Petitioner states that the settlement agreement at issue is flawed because it "did not address the substantial debt load on the [marital] property." However, Petitioner was the party who had that information and she should have filed an update to her financial statement but chose not to do so.[6] Instead, Petitioner entered into the settlement agreement with Respondent, giving him a small portion of the insurance proceeds on the home. A tactical decision of that nature has consequences.[7] As this Court stated in *Moreland v.*

---

[6]*See* W.Va. Code § 48-7-201 (2015) ("In all divorce actions and in any other action involving child support, all parties *shall* fully disclose their assets and liabilities within forty days after the service of summons or at such earlier time as ordered by the court. The information contained on these forms *shall* be updated on the record to the date of the hearing.") (emphasis added).

[7]*See e.g., Brown v. Brown*, No. 11-1705, 2013 WL 149600, at *2 (W.Va. Jan. 14, 2013) (memorandum decision) ("It is undisputed that Mr. Brown incurred this $20,000 debt, yet he failed to list it in his financial disclosures or amend his financial disclosures. West Virginia Code § 48-7-201 requires that in a divorce action 'all parties shall fully disclose their assets and liabilities' and that such information 'shall be updated on the record to the date of the hearing.'

*Suttmiller*, 183 W.Va. 621, 397 S.E.2d 910 (1990): "Once a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement [do] not constitute good cause for setting it aside." *Id*. at 625, 397 S.E.2d at 914. Voluntary settlement agreements that address and reconcile the conflicting interests of divorcing parties should be favored by the court; such arrangements enable parties to freely resolve their marital controversies and order their personal affairs. *See generally*, *Strangolagalli v. Strangolagalli*, 742 N.Y.S.2d 914, 915 (N.Y. App. Div. 2002) (recognizing judicial review of settlement agreement in divorce action is to be exercised sparingly, with goal of encouraging parties to settle their disputes on their own).

For the reasons set forth above, this Court affirms the October 20, 2015, order of the Circuit Court of Tucker County.

Affirmed.


**ISSUED:** November 14, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

West Virginia Code § 48-7-206 provides that '[a]ny failure to timely or accurately disclose financial information' gives the court the discretion to 'accept the statement of the other party as accurate.' *See also*, Rule 13 of the Rules of Practice and Procedure for Family Court. Because Mr. Brown failed to disclose this debt, we find no error in the lower tribunals' decision to hold him liable for it.").