394 S.E.2d 74

**Jerri T. WARNER**

v.

**Glenn Dice WARNER.**

No. 19039.

Supreme Court of Appeals of West Virginia.

May 18, 1990.

John G. Ours, Petersburg, for Jerri T. Warner.

Jerry D. Moore, Franklin, for Glenn Dice Warner.

WORKMAN, Justice:

Jerri T. Warner appeals from a final order of divorce entered by the Circuit Court of Pendleton County on issues of child custody and equitable distribution. Appellant contends that appellee Glenn Dice Warner exerted duress and undue influence in connection with her execution of the property settlement agreement which was entered into by the parties and subsequently ratified by the circuit court. Appellant's claims of duress and undue influence are not supported by the record in this case and we therefore affirm the ruling of the circuit court.

Appellant and appellee were married in Pendleton County, West Virginia, on April 17, 1976. On June 22, 1977, appellant's parents conveyed unto her and Mr. Warner 1.2 acres of real estate on which a family home was constructed. Two boys were born of the marriage whose ages were twelve and five when the final order of divorce was entered on January 11, 1989.

After approximately ten years, the marriage began to deteriorate. Sometime in 1986, appellant purchased a Subaru automobile and executed Mr. Warner's signature on the note and financing papers without his knowledge. Sometime thereafter, appellant became involved in an adulterous relationship with another man. These events contributed, in part, to the parties' decision to obtain a divorce.

On Saturday, May 7, 1988, the parties travelled together to the law office of Mr. Jerry Moore, a Franklin, West Virginia, attorney. Appellant had already moved out of the marital home at this time and was admittedly living with the man with whom she had been engaging in an adulterous relationship. Attorney Moore advised the parties that he could not represent them both and suggested that they try to reach an agreement between themselves with regard to property distribution and child custody. He further suggested that they decide between the two of them which individual Mr. Moore would be representing.

During this same weekend, the parties reached a property settlement agreement which was reduced to writing by the appellant. The unsigned, handwritten[1] agreement is dated May 7, 1988, and provides that Mr. Warner would receive the house and property, a 1979 Ford pickup, sole cus-

---

1. It is unrefuted in the record that the handwriting is that of appellant.

tody of the two minor children of the parties, and further provides that he would be responsible for the debts pertaining to "said property." The document further states that appellant was to receive the 1986 Subaru, personal items such as dishes, towels and bedclothes, as well as visitation rights with respect to the two children.

On Monday, May 9, 1988, the parties returned to the law office of attorney Moore at which time Mr. Warner engaged Mr. Moore to represent him in connection with the parties' divorce. Mr. Moore again advised that Mrs. Warner would have to obtain separate counsel. When Mr. Warner left Mr. Moore's office, he had both an irreconcilable differences divorce complaint and a formal property settlement agreement in hand. The parties then proceeded to the office of the circuit court clerk for the purpose of filing the complaint. The clerk assisted the appellant in preparing and filing a form answer wherein appellant admitted all the allegations set forth in the complaint, including the existence of irreconcilable differences.

After filing the complaint and answer, the parties went to the offices of M. Zelene Harman, another Franklin, West Virginia, attorney. Appellant sought the legal advice of attorney Harman in connection with the property settlement agreement. According to the testimony of Mr. Warner, when his wife emerged from attorney Harman's office she was upset because Ms. Harman had attempted to talk her out of signing the property settlement agreement. Mr. Warner testified that: "When she came back out, I asked my wife, I said, what did she say, and my wife said that she's trying to talk me out of signing the papers, and I told my wife, I said, I was hoping that that's the very thing she would do." Attorney Harman left for court and the parties went to lunch. After lunch, appellant waited on the courthouse steps

for attorney Harman. When appellant conferred with attorney Harman for the second time that same day, Ms. Harman signed the property settlement agreement as appellant's attorney.

Two weeks after she executed the property settlement agreement, appellant deeded her interest in the marital real estate to Mr. Warner. Because the parties were still husband and wife, appellant was asked to sign another deed on July 19, 1988, in connection with Mr. Warner's decision to sell the marital property to appellant's parents and brother.[2] The record in this case indicates that Mrs. Warner willingly executed both deeds.[3]

Mr. Warner testified that he did not want the divorce. To provide his wife with the opportunity to change her mind about the divorce, he specifically requested that his attorney not schedule the hearing before the family law master for at least one month after the property settlement agreement was signed. The hearing was held before the family law master on July 19, 1988. Despite having notice of this hearing, appellant chose not to attend nor to be represented by counsel at the hearing. Following Mr. Warner's testimony, the family law master made various findings of fact and recommendations. The law master determined that Mr. Warner was the primary caretaker of the parties' minor children and that he was a fit and proper person to have custody of the children. The law master further found the parties had entered into a property settlement and child custody agreement and that each party was represented by counsel at the time the agreement was entered into. The family law master recommended that a divorce be granted on grounds of irreconcilable differences, that Mr. Warner should have the care, custody, and control of the children with reasonable visitation granted to

---

**2.** Mr. Warner decided to sell the former marital home and move to Moorefield, West Virginia, to put one of the parties' sons in a private, Christian school. This decision was based on the fact that the child had failed the prior school grade at the public school where he was enrolled and his teachers agreed that he needed special help which they could not provide.

**3.** We assume that the deeds were executed willingly and without protestation as appellant does not contest her execution of either of the two deeds she signed which conveyed her interest in the marital real estate.

the appellant, and that the property settlement and child custody agreement be ratified, approved, and confirmed with regard to division of property as agreed upon between Mr. and Mrs. Warner.

On August 8, 1988, appellant filed a petition for review with the circuit court which alleged undue influence and duress. The Circuit Court of Pendleton County held a hearing on December 5, 1989, in connection with the petition for review. Both parties appeared in person and by counsel. After hearing the testimony of both Mr. and Mrs. Warner, the court ruled as follows:

The motion to refer the matter back to the Law Master to re-open and review would be denied. The Court is satisfied that at the time that Mrs. Warner made her decision to enter into the agreement, it was an agreement entered into by her with full knowledge of the terms of that agreement, with full acquiescence to those terms. As a matter of fact, it's more than acquiescence. It was her wish and desire; that she was capable, fully capable mentally of understanding the terms of the agreement and the consequences thereof, and before it was signed, she had the advice of counsel not to enter into it, because it was what counsel believed to be an unfair or questionable or lop-sided agreement. Yet she chose against the advice of counsel, which she had a right to do, to enter into the agreement, and did enter into it. She chose not to appear at the Family Law Master hearing; had notice of that hearing, opportunity to be present, to be represented by counsel, and again chose not to do so. Her reasons are speculative, but at that time she was in a new relationship with the man with whom she had committed adultery and with whom she went to live and with whom she continues to live, and it is understandable why she would have felt and told her husband, as has been testified and as the Court believes is true, that she simply wanted out of her present marriage at any cost. All she wanted was freedom, freedom from the marriage; freedom from the children; freedom from all the marriage vows ... and she obtained that freedom, and now with the knowledge that the property was worth more money than perhaps she realized at the time, she would like to retract, and it's the impression of the Court that her primary objective is that of seeking monetary reward and not so much that of the children. She has access to the children any time she wants to visit with them; therefore, the Court believes that the agreement that was entered into at arm's length, is in all respect valid, binding on the parties....

Appellant's contention that she was subject to duress and undue influence when she executed the property settlement agreement must be analyzed in conjunction with Rule 52(a) of the West Virginia Rules of Civil Procedure. That rule provides in part that: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." W.Va.R.Civ.P. 52. After having the opportunity to listen to the testimony of Mrs. Warner, the trial court made a finding that appellant entered into the property settlement agreement of her own free will and further that it was her desire to enter into the agreement. This Court cannot disturb a finding of fact made by a trial court unless it is clearly wrong. Syl. Pt. 2, *Lewis v. Dils Motor Co.* 148 W.Va. 515, 135 S.E.2d 597 (1964).

After reviewing the record in this case, we are convinced that the circuit court did not err in finding that it was Mrs. Warner's "wish and desire" to execute the property settlement agreement and that she did so "with full knowledge of the terms of that agreement." In so finding, the court implicitly determined that the agreement was not a result of duress or undue influence. The record is replete with evidence that supports the trial court's finding.

■ Appellant attempted to establish duress and undue influence based on two allegations. She claims that she only signed the property settlement agreement because Mr. Warner was threatening to send her to jail for forging his name in

connection with her purchase of the 1986 Subaru and because he was threatening to expose her adulterous relationship. An examination of the testimony concerning these allegations in conjunction with the principles of duress and undue influence compels the conclusion that Mrs. Warner executed the property settlement agreement of her own volition and not because she was subject to duress or undue influence.

Duress is defined as

that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind and will of a person of ordinary firmness.... The requirements of common-law 'duress' have been enlarged to include any wrongful acts that compel a person, such as a grantor of a deed, to manifest apparent assent to a transaction without volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction.

*Norfolk Div. of Soc. Serv. v. Unknown Father,* 2 Va.App. 420, 345 S.E.2d 533, 541 (1986) (quoting 6B Michie's Jurisprudence *Duress and Undue Influence* § 2 (1985)). The alleged "duress" in this case is prosecution of a forgery. Since appellant admits that she forged Mr. Warner's name when she purchased the 1986 Subaru, the question raised is whether a threat to institute criminal prosecution can amount to duress where there is no question as to guilt. Regardless of guilt or innocence, the authorities are not in accord with regard to whether a threat to prosecute a criminal complaint can amount to duress. *See generally* 25 Am.Jur.2d *Duress and Undue Influence* §§ 15–16 (1966); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 176 comment c (1981) (threat to institute criminal prosecution is improper as means of inducing execution of contract). The modern approach to resolving the issue of duress focuses on the issue of whether an individual has been "preclude[d] ... from exercising free will and judgment in entering into a transaction." *Unknown Father,* 345 S.E.2d at 541; *see* 25 Am.Jur.2d *Duress and Undue Influ-*

*ence* § 12 (1966). We adopt this approach in holding that when a person can establish that a threat to prosecute a criminal claim, irrespective of the individual's guilt or innocence, destroyed her ability to exercise her free will, duress may exist sufficient to set aside an agreement which was executed under the influence of such threat. The individual claiming duress has the burden of demonstrating such allegations of duress by clear and convincing evidence.

■ The record in this case does not reveal anything more than a conclusory allegation of duress. No testimony whatsoever was elicited by appellant during her direct testimony regarding the alleged threat to institute a criminal proceeding. On cross-examination, when asked why she did not appear at the hearing before the Family Law Master, appellant claimed that Mr. Warner was threatening to send her to jail for forgery. When questioned further on cross-examination as to how Mr. Warner had used the threat of prosecution when Mrs. Warner was no longer living in the marital house, appellant stated only that "he would call me up." Critically, appellant never testified that she signed the property settlement agreement under threat of criminal prosecution. The paucity of evidence regarding the threat to institute criminal prosecution forces us to conclude that the circuit court did not err in finding that Mrs. Warner desired to sign the property settlement agreement and did so of her own volition. Accordingly, we cannot set aside the agreement on grounds of duress given the absence of clear and convincing evidence on this issue.

■ Appellant's claim of undue influence likewise fails on the facts of this case. To invoke undue influence as a means of voiding an executed document, an individual must establish that he had no free will when he signed the document in question. *See Sturm v. Stump,* 239 F. 749, 754 (N.D. W.Va.1917), *rev'd on other grounds,* 254 F. 535 (4th Cir.1918), *cert. denied,* 248 U.S. 578, 39 S.Ct. 19, 63 L.Ed. 430 (1918); *see also Nuckols v. Nuckols,* 228 Va. 25, 320 S.E.2d 734 (1984) (undue influence occurs when "manifest irresistible coercion" deprives person of volition to dispose of property as he desired). The fact that appellant

 

was not living in the marital home when she signed the property settlement agreement strongly suggests that Mr. Warner could not have exhibited physical or emotional control over her sufficient to destroy her free agency. Appellant's theory of undue influence is negated further by the fact that she had advice of counsel with regard to the agreement. Moreover, she was advised by counsel not to sign the agreement, yet she voluntarily chose to ignore this legal advice.

Appellant contends that appellee's alleged threats to expose her adultery induced her to sign the property settlement agreement against her free will. Appellant's own testimony and her acts refute this theory. She was already openly residing with the other gentleman at the time the agreement was executed, and in her testimony, Mrs. Warner admitted that she had already discussed the adulterous relationship with her pastor. In response to questions about whether he threatened to expose appellant's adultery, Mr. Warner testified that: "Everybody knew it.... She done exposed it. She took the man to church with her, before this." A threat of exposure could not have amounted to coercion sufficient to destroy Mrs. Warner's free will in view of appellant's general openness about the adulterous relationship. *See Mullens v. Lilly*, 123 W.Va. 182, 196, 13 S.E.2d 634, 641 (1941).

During the two month period after she had signed the agreement, Mrs. Warner never informed an attorney or anyone else that she had executed the document against her will. She likewise failed to appear at the hearing before the family law master to protest the ratification of the property settlement agreement. Not only did appellant fail to raise the legality of the agreement despite numerous opportunities, she subsequently exercised her free will on two separate occasions and signed deeds pertaining to the marital home. Just as appellant failed to meet her burden of proving duress, so too has she failed to demonstrate undue influence. *See id.* 123 W.Va. at 196, 13 S.E.2d at 641–42.

The trial court's finding that appellant's "primary objective is that of seeking monetary reward and not so much that of the children" appears to be correct. The unre-

futed testimony regarding appellant's exercise of her visitation rights was that she had only seen her children on four different occasions between May 9, 1988, and December 5, 1988. Appellant's failure to visit with her children more than four times in a seven-month period despite appellee's offer to vacate the former marital home to accommodate such visitation, does not comport with the level of interest in and involvement with young children associated with a healthy maternal instinct.

This Court encourages the use of property settlement agreements to resolve the distribution of marital property as well as other issues such as child custody and support. These agreements, when properly executed, are legal and binding and this Court will not set aside such agreements on allegations of duress and undue influence absent clear and convincing proof of such claims. We find that appellant overwhelmingly failed to prove that she executed the property settlement against her will. Accordingly, the circuit court correctly ratified the property settlement agreement and its division of the marital property as required by W.Va. Code § 48–2–32(b) (1986).

Based on the foregoing, the order of the Circuit Court of Pendleton County is affirmed.

Affirmed.