# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DEREK G.,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-416**   (Fam Ct. Cabell Cnty. Case No. 2021-D-431)

**MICHELE G.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Derek G.[1] ("Husband") appeals the Family Court of Cabell County's August 24, 2023, Final Order, which adopted the parties' oral settlement agreement that was placed upon the record during the July 20, 2023, final hearing. Respondent Michele G. ("Wife") filed a response in support of the family court's order.[2] Husband did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in May of 2016 and separated in August of 2021. There were no children born of the marriage, but Wife has three children from a previous relationship. After the parties separated, Wife remained in the marital home and took sole financial responsibility for the upkeep, maintenance, and mortgage of the home. Husband's financial contributions toward the home ceased upon the parties' separation. In September 2021, Husband filed for divorce in the Family Court of Cabell County.

The family court held three hearings on the matter. On June 27, 2022, the family court held the first hearing on the divorce petition. Based upon the record, either prior to the filing of divorce or shortly thereafter, the parties had begun negotiating a property

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Husband is represented by Kenneth E. Chittum, Esq. Wife is self-represented.

settlement agreement. During the hearing, the parties testified to the terms of their agreement. Husband would refinance and receive the parties' Harley Davidson motorcycle, Ford F150 truck, and Grandview Camper in his name only and, in exchange, Wife would refinance and receive the marital home in her name only and use the equity to pay off the marital debt totaling approximately $14,000. Wife had the home appraised and on November 8, 2021, the home was appraised for $174,481.[3] The parties also agreed on other property, which is not relevant to this appeal.

During the June 27, 2022, hearing, Husband's attorney reiterated the parties' settlement agreement and stated that he recently received a closing disclosure from the bank, indicating that the value of the home was $171,000, the interest rate was great, and the payment was great. Husband's attorney also stated that he assumed that Wife was successful in refinancing the home pursuant to their agreement since the bank sent him the disclosure. However, Wife testified that she was unable to refinance the home because her debt-to-income ratio was excessive because the truck, motorcycle, camper, house, her separate vehicle, marital credit cards, and student loans, were all in her name. Further, Wife testified that she was made aware of a particular marital credit card debt that was also attributing to the delay; so, she paid that particular debt in order to facilitate the home's refinancing process. Additionally, testimony revealed that Husband had successfully refinanced the truck and the motorcycle. However, Husband contended that he was unable to refinance the camper because the parties owed more on the camper than what it was worth. Nonetheless, Husband testified that if he was unable to refinance the camper, he intended to continue making the payments and to remain in sole possession of the camper.

Due to the outstanding refinancing issues that would take additional time to complete, the parties asked the family court to bifurcate the property issues and grant the divorce. Husband's attorney stated that if Wife was unsuccessful in refinancing the home in her name, Husband would be agreeable to either selling the property, paying the marital debt from the profit, and then splitting the remaining profit between the parties, or Wife could purchase Husband's interest in the home. The parties also acknowledged that if they could not refinance the remaining property pursuant to their agreement, the family court would order mediation. The court gave the parties thirty days to finalize their settlement agreement, and for Husband's attorney to either submit an agreed order or notify the court that mediation was necessary. On July 11, 2022, the court entered a bifurcated order divorcing the parties.

After the June 27, 2022, hearing, the parties were unable to refinance the home and the camper, but the family court was never notified that mediation was necessary. On October 7, 2022, Husband's attorney sent a letter to Wife stating that Husband was agreeable to the following terms: Wife was to refinance the home in only her name; Wife

---

[3] The record indicates that at that time, the parties owed $137,961.00 on the home.

was to have the home's deed prepared at her expense for Husband to sign; Wife was to pay Husband $5,000 from the home's equity after refinancing; and as soon as the home was out of Husband's name he would refinance the camper. Wife responded to Husband's attorney asking about the marital credit card debt since it was not included in the letter. The record indicates that Husband's attorney did not reply to Wife's inquiry.

On November 21, 2022, Wife filed a petition for contempt alleging, among other things, that Husband and his attorney had made no reasonable effort to finalize their agreement as ordered at the June 27, 2022, hearing. She asserted that she had made numerous attempts to contact Husband and his attorney, especially after receiving his October 7, 2022, letter, but all her messages were unreturned. Her petition stated that she attached exhibits illustrating, among other things, the lack of communication from Husband and his attorney; however, some of these exhibits were not provided to this Court on appeal.[4] In Husband's answer to her petition, he asserted that Wife agreed to sell the house and pay the marital debt and then changed her mind. He also asserted that there had never been a settlement agreement between the parties.

On February 9, 2023, the family court held a second hearing on the matter, and Wife's petition for contempt was also heard. During the hearing, Husband's attorney stated that once Wife refinanced the home, Husband would then refinance the camper. The attorney contended that Husband could not refinance the camper until Wife refinanced the home. Husband's attorney reiterated Husband's offer from the October 7, 2022, letter. However, the attorney then requested that the court order the house sold at fair market value and to either divide the equity evenly, or "if there was no equity and there was in fact a deficit, that we would pay our fair share [of the marital debt], our half, and she could pay her half" and then Husband would refinance the camper.

Wife testified regarding an email she sent to Husband's attorney after receiving his October 7, 2022, offer, that was attached to her petition for contempt as an exhibit. She testified that she responded to the letter by email on October 7, 2022, at 8:29 p.m., informing Husband's counsel that there was no mention of the marital credit card debt in the written offer and asked if Husband would consider waiving the $5,000 he requested in lieu of her paying his $7,000 half of the $14,000 marital debt. She testified that she had not heard from Husband or his attorney since then. Wife further testified that she had bank statements and documents showing that Husband had not contributed financially to the mortgage or utilities in over a year and a half and that she had paid for everything, including the maintenance, on her own. She also testified that Husband was not making payments on his portion of the marital credit card debts. Husband acknowledged that he had skipped some payments and was late on others. Thereafter, the family court ordered the parties to

---

[4] Wife's exhibits were filed and attached to her petition for contempt according to the circuit clerk's docket sheet.

attempt to resolve the matter within thirty days. The court specifically ordered the parties to schedule a settlement conference within the next ten days, and if the conference was unsuccessful, to conduct mediation within the thirty days. If mediation was unsuccessful, the court would schedule a final contested hearing. The court also ordered that any marital debt in arrearages be brought current within thirty days of the hearing.

On April 12, 2023, Wife filed a second petition for contempt against Husband, alleging that he had not been paying his share of the marital credit card debt arrearages as ordered, had violated the court's rulings from the February hearing by failing to communicate in order to finalize their settlement agreement or begin mediation. Wife attached numerous emails to her petition to illustrate that while she had been willing and persistent in her efforts to finalize an agreement, Husband's attorney was either unresponsive, vague, or forgetful when he did respond.[5]

On May 3, 2023, Husband filed his answer to Wife's petition and attached a letter dated for that same day addressed to Wife from Husband's attorney. In his answer, Husband asserted that although they had reached a tentative agreement that Husband would refinance the camper only after Wife refinanced the home in her name, Wife kept changing the terms of their agreement. However, his answer also contended that he recently refinanced the camper in his name only, which was also stated in his attorney's letter to Wife.

On July 20, 2023, the family court held a final hearing on the matter, where it also heard Wife's second petition for contempt. Upon our review of the recording from the hearing, the family court expressed frustration with Husband's attorney for not being responsive to Wife regarding their negotiations. The court stated that after reviewing the file, Husband had agreed to retain the truck, motorcycle, and camper in exchange for Wife retaining the home and absolving the marital debt. Testimony revealed that Husband had acted affirmatively and refinanced the three items that he desired in his name only, but according to the lender, Wife could not refinance the home until the deed was solely in her name. Husband's attorney stated that he and Husband were cautious of finalizing the agreement because they now believed the value of the home had increased since the November 2021 appraisal. However, Husband did not provide any testimony or

---

[5] A review of the emails in the record indicates the following agreement: Husband agreed to sign his portion of the home over to Wife after she provided an approval letter from her loan officer and paid to have the deed prepared; Wife would refinance the home in her name only and assume all marital credit card debt; and Husband would refinance the camper, the remaining marital asset, in his name only. However, Wife asserted that she could not refinance the home until Husband refinanced the camper and Husband asserted vice versa. Wife provided her approval letter from her loan officer and paid a local attorney to draft the deed pursuant to Husband's requests.

documentation to support that claim. Wife testified that the only value she had of the home was from the November 2021 appraisal and that interest rates had increased since then. Additionally, Husband testified that he was upset because he believed Wife was no longer living in the home. Wife testified that her position never changed. Wife testified that she "gave him all the assets he wanted" and because those assets were either sold or refinanced, there was "no longer other marital property to consider."

After hearing additional testimony, the family court asked the parties if they were still agreeable that Wife would refinance the home and absorb the marital debt under a mandated time frame, since Husband had finally been able to refinance and had taken sole possession of the truck, motorcycle, and camper. Both parties answered in the affirmative. Husband additionally agreed to pay $543 to Wife for his share of the marital debt that had accrued during the divorce proceedings, which he was previously ordered to pay. Husband also agreed to sign the deed of the home over to Wife and waive any equity or debt from the home. The parties agreed that if Wife did not refinance the home within a certain time frame, the family court would set a hearing on the matter or enter an order requiring Wife to deed the home back to herself and Husband jointly.

The family court discussed the fairness of the agreement and stated the terms of the agreement multiple times on the record to ensure its accuracy. The parties agreed to the following: Husband would solely own the truck, motorcycle, and camper since he had already refinanced them in his name; in exchange, Husband agreed to sign the deed, which was prepared by a local attorney, immediately after the hearing; Wife would solely own the marital home and use the equity from refinancing the home to pay the remaining marital credit card debt; and Husband would pay $543 to Wife regarding his portion of a marital debt that she had paid during the proceedings. At the conclusion of the hearing, the court specifically asked the parties, "[a]re you both entering into this agreement fully, voluntarily, without duress? Nobody is sitting on a hand grenade that I don't know about?" The parties replied that they were entering into the agreement fully, voluntarily, and without duress. Husband agreed to sign the deed that had been prepared by a local attorney's office as soon as the hearing concluded.

On July 20, 2023, the family court sent the parties notice, pursuant to Rule 22(b) of the West Virginia Rules of Practice and Procedure for Family Court of its intent to enter the final order from the July 2023 hearing regarding the parties' agreement, along with the attached proposed final order. Based on the parties' oral agreement on the record, the order required Husband to pay $543 to Wife, ordered him to sign the deed of the home over to Wife and gave Wife ninety days to refinance the martial home in her name only and to pay the remaining marital credit card upon closing. Pursuant to Rule 22(b), the parties were given five days to file written objections to the court's order. No objections were filed by either party.

5

After the final hearing, and after Husband had signed the deed, and Wife had refinanced the home, the home was listed for sale at $259,000. On August 14, 2023, Husband filed a motion for the family court to reconsider its final order. Husband's motion alleged that the court awarded Wife the marital home based on her misrepresentation of the fair market value of the home and that he was entitled to his half of the equity in the home. That same day, the family court entered the final order from the July 20, 2023, hearing and an order denying Husband's motion for reconsideration. In its order denying Husband's motion for reconsideration, the court determined that Husband's motion did not set forth a basis for the court to reconsider the final order. The court reasoned that during the final hearing, the court stated the parties' agreement multiple times on the record, to which both parties stated that "they were in complete agreement." It is from the August 24, 2023, final order that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Husband raises two assignments of error. First, he asserts that the family court erred by accepting Wife's misrepresented fair market value of the marital home. In support of his argument, Husband relies on West Virginia Code §§ 48-7-201 (2001), 48-7-202 (2001), 48-7-203 (2001), and 48-7-206 (2001), which govern the disclosure of financial assets and liabilities in all divorce actions. We find no merit in this argument.

The Supreme Court of Appeals of West Virginia has long held that "[w]hen the issue in a divorce proceeding is the equitable distribution of marital property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property." Syl. Pt. 3, *Roig v. Roig*, 178 W. Va. 781, 364 S.E.2d 794 (1987). "The burden is on both parties to the litigation to adduce competent evidence on the values to be assigned in equitable distribution cases." Syl. Pt. 8, *Mayhew v. Mayhew*, 197 W. Va. 290, 475 S.E.2d 382 (1996), *overruled on other grounds by Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999).

Here, Husband, without citing to the record, argues that the parties' agreement was based on the home's value, and that Wife misrepresented the fair market value of the home

during the family court's final hearing.[6] However, our review of the recording of the July 20, 2023,[7] final hearing establishes that Wife represented the value of the home in accordance with the November 2021 appraisal report she had previously submitted to the court; Husband did not offer any evidence, by testimony or otherwise, relating to the home's value, other than his attorney's statement that the attorney and Husband believed the home may be worth more than the initial appraisal. Both parties had previously filed their financial assets and liabilities disclosure with the family court and further, we are unable to locate where Husband raised the issue of financial disclosures below. It is well established law that "[o]ur general rule is that nonjurisdictional questions raised for the first time on appeal, will not be considered." *Battista v. Battista*, No. 23-ICA-40, 2023 WL 5695427, at *2 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision) (quoting *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citation omitted)). Accordingly, we find no error.

Husband's second assignment of error asserts that the family court erred by not complying with West Virginia Code § 48-6-201 (2001) in finding that the parties' oral agreement was fair and equitable and not obtained by fraud, duress, or other unconscionable conduct. Again, we disagree. Our review of the recording from the final hearing reveals that the family court discussed the fairness and the terms of the parties' agreement more than once, and after confirming those terms with the parties, specifically asked them if they were "both entering into this agreement fully, voluntarily, [and] without duress[,]" to which they replied in the affirmative.

The Supreme Court of Appeals of West Virginia "encourages the use of property settlement agreements to resolve the distribution of marital property[.]" *Warner v. Warner*, 183 W. Va. 90, 95, 394 S.E.2d 74, 79 (1990). "These agreements, when properly executed, are legal and binding and this Court will not set aside such agreements on allegations of duress and undue influence absent clear and convincing proof of such claims." *Id*. The Court has long held that "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the

---

[6] The Court notes that Husband has the duty to support his arguments with citation to authority as well as "appropriate and specific citations to the record . . ." W. Va. R. App. P. 10(c)(7). Otherwise, "[t]he Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal." *Id.*

[7] We note that the transcript of the July 20, 2023, final hearing that Husband's attorney filed in his appendix with this Court is incorrect as it pertains to the date of the hearing transcribed. Our review of the recordings from the three hearings in this matter establishes that the transcript provided by Husband's attorney is actually the transcript for the February 9, 2023, hearing.

wisdom of the settlement [do] not constitute good cause for setting it aside." *Moreland v. Suttmiller*, 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990).

Here, Husband's testimony revealed that he had already acted affirmatively by receiving and refinancing the marital assets he desired pursuant to the settlement agreement prior to the final hearing. There was also testimony that he had already sold some of those assets. Additionally, Husband never argued below that the settlement agreement was unfair, unequitable, or obtained by fraud or duress, and neither party filed an objection to the family court's proposed final order that was distributed pursuant to Rule 22(b) of the Rules of Practice and Procedure for Family Court. Husband's "second thoughts" did not occur until after Wife listed the home for sale, which does not constitute good cause for setting the agreement aside since he had already received the assets he wanted pursuant to their agreement. Thus, we find no error.

Accordingly, we affirm the Family Court of Cabell County's August 24, 2023, Final Order.

Affirmed.


**ISSUED:**  December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear