IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**BRANDON L.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-41**    **(Fam. Ct. Harrison Cnty. Case No. FC-17-2024-D-250)**

**STEPHANIE L.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brandon L.[1] ("Father") appeals the Family Court of Harrison County's December 26, 2024, divorce order, incorporating the parties' settlement agreement and agreed parenting plan and ordering him to pay spousal support and attorney's fees. Respondent Stephanie L. ("Mother") responded in support of the family court's decision.[2] Father filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother were married on March 15, 2002, and separated on June 26, 2024. They share one child, born in 2010. Mother filed for divorce on July 25, 2024, alleging that Father had engaged in unsafe and unendurable behavior during the marriage.[3] Father is an engineer, and Mother is a nurse who worked part-time and served as the child's primary caretaker. Mother, who was represented by counsel below, also filed a proposed

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is represented by Connor L. Thomas, Esq., and Shannon R. Thomas, Esq., Thomas Legal Group, PLLC. Mother is self-represented.

[3] West Virginia Code § 48-5-203 states that divorce may be ordered for cruel and inhuman treatment, which includes, in part, "[c]onduct or treatment which destroys or tends to destroy the mental or physical well-being, happiness and welfare of the other and render continued cohabitation unsafe or unendurable."

parenting plan, wherein she alleged that Father was abusive to the child and engaged in domestic violence in the child's presence. For parenting time, Mother requested that visitation take place at the child's discretion and asked that Mother be granted sole decision-making authority. Father, who was unrepresented below, did not file an answer or otherwise respond to Mother's pleadings.

The parties appeared for a telephonic hearing on September 24, 2024. Father hired an attorney on September 25, 2024, who filed discovery requests on his behalf, but later withdrew as counsel.

On November 15, 2024, the parties signed an agreed parenting plan, wherein they agreed that "all parenting time between the parties' child and [Father] shall be at the discretion of the parties' child." The parties also agreed to share decision-making authority.

On December 10, 2024, the night before the final hearing was scheduled, Mother's attorney contacted Father to discuss the case. On that same date, Mothers' attorney also drafted a settlement agreement and sent it to Father through DocuSign for him to review, sign, and return to her, which included attachments reflecting the division of property for equitable distribution. On December 11, 2024, the parties signed the settlement agreement, which included the following provisions:

- The parties shall split the mortgage payment pending the sale of the marital home.
- The parties shall equally divide the proceeds from the sale of the marital home.
- Child support and spousal support will have an effective date of December 1, 2024.
- Father shall pay Mother $12,383 to equalize the marital estate; said payment shall be made from Father's share of the sale proceeds from the marital home.
- "The parties hereto certify that each of them has read and understand the terms and provisions of this agreement; that, if he desired to do so, Brandon [L.] has had an opportunity to consult with counsel before executing the same; that Stephanie [L.] has had an opportunity to consult with her counsel; that each of them enters into the agreement voluntarily of his/her own free will without fraud, duress, undue influence or coercion; and that each of them believes the terms and provisions herein are fair, equitable, and just under the circumstances existing at the time of the execution of hereof. There are not representations, promises, or warranties other than those expressed and set forth herein."

The settlement agreement covered everything except child support, attorney's fees, and spousal support.

The final divorce hearing was held on December 11, 2024, and the final order was entered on December 26, 2024. The final order incorporated and adopted the parties' parenting and property agreements. Husband's monthly income was determined to be $14,375, and Wife's monthly income was determined to be $7,400. Father's child support obligation was set at $1,129.08 per month.

As for spousal support, the family court analyzed all the spousal support factors listed in West Virginia Code § 48-6-301 (2018).[4] The family court found that the parties were married for almost twenty-three years, Father's income was almost double that of Mother's income, the sale of the marital home would provide each party with approximately $100,000, Mother was forty-three years old and Father was forty-five, Mother was a nurse and Father was an engineer, Mother worked sporadically and cared for the child, the parties had more income during the marriage than their needs required, and Mother's expenses exceeded her monthly income. Father provided no evidence of his monthly expenses, but the family court heard evidence that he has a significant other who could assist with his household expenses. The family court further determined that Father was at fault for the divorce due to committing domestic violence. Based on those facts, the family court ordered Father to pay $2,000 per month in permanent, modifiable spousal support.

Regarding attorney's fees, the court conducted a *Banker* analysis,[5] finding that Mother prevailed in the contested spousal support issue, Mother's $3,757.50 in attorney's fees were reasonable, Father's inaction in the case was unreasonable, and Father had significantly more disposable income. Based on those facts, the family court ordered Father to pay Mother $3,000 in monthly installments of $600.00 to help cover her attorney's fees.

---

[4] West Virginia Code § 48-6-301 provides a list of twenty non-exclusive factors to be considered in awarding spousal support.

[5] *See* Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996), which provides guidance on how to calculate attorney's fee awards, and states as follows:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Regarding Father's participation in the proceedings, the family court found that he "did not submit any financial information to the court as ordered and as required by the West Virginia Code, [. . .] provided no evidence about the amount of his monthly expenses, [. . .] [and he] was unreasonable during the action as he filed no disclosure and did not ever respond to discovery requests."

It is from the December 26, 2024, order that Father now appeals.

For these matters, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Father raises four assignments of error, two of which will be consolidated because they are similar. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

First, Father asserts that the family court erred when it adopted the property settlement agreement and parenting plan because he was not given a reasonable opportunity or accommodation to review it with his counsel. Father's argument lacks merit. The Supreme Court of Appeals of West Virginia ("SCAWV") has long held that "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement [do] not constitute good cause for setting it aside." *Moreland v. Suttmiller*, 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990). The SCAWV has also held, "[t]hese agreements, when properly executed, are legal and binding and this Court will not set aside such agreements on allegations of duress and undue influence absent clear and convincing proof of such claims." *Warner v. Warner*, 183 W. Va. 90, 95, 394 S.E.2d 74, 79 (1990). Moreover, the settlement agreement specifically states that both parties had an opportunity to consult counsel, and that the agreement was not entered into due to fraud, duress, or coercion. Here, Father has not shown that he experienced duress or undue influence nor has he shown any reason why this Court should not accept his acknowledgement that he had the opportunity to consult with counsel prior to signing the settlement agreement. Therefore, we find no error the family court's decision to adopt and incorporate the parties' property settlement agreement and parenting plan into the final divorce order.

4

In Father's second and third assignments of error, he contends that the family court erred in calculating child support because it improperly failed to attribute full-time pay to Mother and used inconsistent incomes for determining support amounts. He also argues that the family court failed to consider Mother's voluntary and unreasonable underemployment, as well as his monthly needs. We disagree. The record reflects that Mother worked thirty-six hours per week as a registered nurse, and even though she is classified as an optional part-time employee, she earns more than full-time pay. Furthermore, Father originally failed to provide financial documentation, failed to respond to Mother's discovery requests, and failed to provide evidence about his monthly expenses.[6] West Virginia Code § 48-7-206(1) (2001) states, "[u]pon the failure by either party timely to file a complete disclosure statement [. . .] the court may accept the statement of the other party as accurate." Additionally, West Virginia Code § 48-13-804(a)(1) (2008) states, "[w]hen applying the child support guidelines, the court may accept financial information from the other party as accurate." The SCAWV has consistently held that "a party who does not cooperate in a proceeding cannot complain about the result." *See generally Young v. Young*, 194 W. Va. 405, 460 S.E.2d 651 (1995). Here, Father failed to cooperate below and now seeks a different result in his child support and spousal support obligations. However, we find no merit in his arguments and affirm the family court's ruling on these issues, in accordance with *Young*.

Last, in his fourth assignment of error, Father argues that the family court erred in its award of attorney's fees because it failed to properly analyze the factors outlined in *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996). We disagree with Father. Upon our review of the family court's order, we cannot conclude that the family court erred in its application of *Banker*, and thus, we find no abuse of discretion by the family court.

Accordingly, we affirm the family court's December 26, 2024, divorce order.

Affirmed.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[6] We also note that Father was questioned by the court and opposing counsel about his income and paystub and provided detailed testimony about both.

5