IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ELIZABETH M.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-269**   (Fam. Ct. Jefferson Cnty. Case No. FC-19-2024-D-157)

**DEREK C.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Elizabeth M.[1] ("Mother") appeals the Family Court of Jefferson County's June 6, 2025, final custodial allocation order which incorporated the parties' parenting agreement but failed to calculate child support. Respondent Derek C. ("Father") filed a response in support of the family court's decision.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For these reasons, a memorandum decision affirming, in part, and remanding, in part, the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother were never married but share one child, born in 2019. At the time of the proceedings below, Mother lived in Jefferson County, West Virginia, and Father lived in Raleigh County, West Virginia. Mother's husband was originally listed as the child's father on her birth certificate.[3] However, Father filed a petition for custodial allocation on June 4, 2024.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is self-represented. Father is represented by Paul G. Taylor, Esq.

[3] While it appears that the child's paternity was already legally established when Father filed his petition for custodial allocation, there is nothing in the appendix record to indicate that the family court appointed a guardian ad litem for the child pursuant to *Michael K.T. v. Tina L.T.,* 182 W. Va. 399, 387 S.E.2d 866 (1989). However, it does not

The family court conducted a hearing on Father's petition on September 11, 2024. During that hearing, Mother acknowledged that Father was the child's biological father; however, she requested paternity testing. By order entered October 8, 2024, the family court ordered the parties to submit to paternity testing. Strangely, despite this, the court found in its order entered April 10, 2025, that Father completed a paternity affidavit during the April 10, 2025, hearing.

Thereafter, Mother refused to comply with the court's order and failed to bring the child to five scheduled paternity testing appointments on November 7, 2024, December 5, 2024, January 2, 2025, February 6, 2025, and March 6, 2025. On March 11, 2025, Father filed a petition for contempt against Mother for her failure to comply with the family court's paternity testing order. In his contempt petition, Father also alleged that Mother had minimized contact between the child and him, and he requested attorney fees.

The family court scheduled a hearing on April 10, 2025, at 1:00 p.m., but Mother did not appear until 2:00 p.m., after the family court issued a capias for her arrest. By order entered April 10, 2025, the family court held Mother in contempt for her noncompliance and ordered her to pay $291.85 for court costs and $3,000 in attorney fees. The family court granted Father sole custody of the child and sole decision-making authority. The court granted Mother parenting time with the child at Father's discretion. The court further ordered the parties to communicate only through AppClose. The court ordered Father to take the child for paternity testing. The court ordered Mother incarcerated for civil contempt but released her from custody by order entered four days later after Mother posted a $5,000 cash bond with circuit clerk's office.

Father took the child for paternity testing on April 11, 2025. The parties do not dispute that the paternity test results released on April 23, 2025, demonstrated a statistical probably of paternity sufficient for the court to legally establish Father as the child's biological father pursuant to West Virginia Code 48-24-103(a)(3).[4] However, the court did not make any findings regarding the paternity testing results in the order on appeal.

appear that any party requested the appointment of a guardian ad litem for the child or objected to the court's failure to appoint one.

[4] The paternity testing results do not appear to be included in the appendix record; therefore, the statistical probability of paternity revealed by the testing is unknown. Further, the orders included in the appendix record do not contain any findings as to the statistical probability of paternity. Also, while the family court did not specifically "establish" Father as the child's father in the order on appeal, the court ordered that the child's birth certificate be amended to reflect that Father is the child's biological father. Further, it does not appear from the record on appeal that the family court entered an order requiring the West Virginia

2

The family court conducted another hearing on April 29, 2025. On May 8, 2025, Mother filed a motion to expedite the proceedings, alleging that the child was suffering mentally due to the custody change. Mother also apologized to the court for her noncompliance with the court's order regarding paternity testing and her failure to appear for the hearing on time. On May 29, 2025, the family court entered its order stemming from the April 29, 2025 hearing. The family court found that Mother had alienated the child from Father and ordered a family assessment and reunification therapy through a private mental health provider.

The final hearing was held on May 28, 2025. During that hearing, the parties reached the following agreement: (1) during the school year, Father would have parenting time the first two weekends of each month from Friday at 4:00 p.m. until Sunday at 3:00 p.m.; (2) on the third weekend during the school year, Father was allowed to visit the child near her home on Saturday from 12:00 p.m. until 6:00 p.m. with the option of staying overnight locally with the child on Saturday evening; and (3) during summer, Father would have parenting time during the first full week of every month from Sunday at 3:00 p.m. through the following Sunday at 3:00 p.m. and on the third weekend of every month from Friday at 4:00 p.m. until Sunday at 3:00 p.m. The parties also agreed on visitation for spring break, Mother's Day, Father's Day, Fourth of July, Thanksgiving, and Christmas. Father received designated time for phone calls four evenings per week. The final order reflecting the parties' agreement was entered on June 6, 2025. Mother now appeals that order.

For these matters, we use the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises nine assignments of error. Because most of Mother's arguments can be addressed together, they will be consolidated. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237

---

Division of Vital Statistics to remove the name of the man listed as father on the child's birth certificate.

(2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

First, Mother asserts that the family court failed to consider the child's best interest, established preferences and routines with her siblings, psychological development, and stability. She further argues that the court prioritized Father's interests and granted him overly generous visitation, failed to consider the doctrine of paternity by estoppel, failed to consider the non-biological father's role as a de facto parent, and did not consider Father's violation of a magistrate-issued safety order. We find that since Mother and Father reached an agreement on custody, these arguments lack merit.

The Supreme Court of Appeals of West Virginia ("SCAWV") has consistently held, "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement [do] not constitute good cause for setting it aside." *See Moreland v. Suttmiller*, 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990). Additionally, the SCAWV has held that when agreements are properly executed, they are "legal and binding and this Court will not set aside such agreements on allegations of duress and undue influence absent clear and convincing proof of such claims." *See Warner v. Warner*, 183 W. Va. 90, 95, 394 S.E.2d 74, 79 (1990). In the present case, Mother does not allege on appeal that the parties' agreement was reached under duress or undue influence. Instead, she expresses her dissatisfaction with the outcome below. Therefore, we conclude that the family court did not err or abuse its discretion when it incorporated the parties' agreement into the final order.

Next, Mother contends that the family court erroneously failed to calculate child support. We agree. West Virginia Code § 48-9-205(c)(4) (2022) states that the court, when ordering a permanent parenting plan, shall order "[p]rovisions for the financial support of the child." Because the family court failed to address child support, we remand on that limited issue and direct the family court to calculate child support and enter an order establishing child support.

Accordingly, the family court's June 6, 2025, order is affirmed, in part, and remanded, in part, with directions.

Affirmed, in part, and Remanded, in part, with Directions.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

4